FREED v. STUART.

1. DRAINS—LOST RECORDS—RESTORATION.
   Where a public drain has been in existence for over 30 years, and no record of the proceedings for its establishment is to be found, the case is one for proceedings under section 4379, 2 Comp. Laws, providing for the restoration of lost drain records.

2. SAME—CLEANING OUT OLD DRAINS—AUTHORITY
   Authority of the drain commissioner to a landowner to enter upon the lands of others and clean out an established drain can extend no further than to authorize restoring the drain to its original dimensions.

Error to Calhoun; Hopkins, J. Submitted October 12, 1906. (Docket No. 76.) Decided January 4, 1907.

Bill by John A. Freed against Frank A. Stuart, George W. Robinson and others to restrain the obstruction of a drain. Defendants Stuart and Robinson filed answers in the nature of cross-bills to enjoin complainant from deepening and widening said drain. From a decree for complainant, said defendants appeal. Reversed, and bill dismissed without prejudice.

The main purpose of the bill filed in this case is to restrain the defendants Stuart and Robinson from obstructing a drain known as the "Brace Lake Drain." The bill alleges the obstruction, but it alleges that complainant "is unable to give a more accurate description of said drain as petitioned for, for the reason that your orator has, and the county drain commissioner has, been unable to find the original petition or application and the survey bill for said drain, or any copies thereof, although diligent search has been made therefor." The defendants answered, admitting the erection of the dam, and charged that the complainant had entered upon this ditch without any right or

authority, and had deepened and widened it beyond its dimensions as they had been for more than 20 years, and asked affirmative relief by injunction against such conduct on the part of the complainant. Defendant Rentschler was an employé of defendants Stuart and Robinson, and defendant Dickinson was drain commissioner. As to them no relief is asked. The answers do not deny the existence of the drain, and upon the hearing it was conceded that this was a legal public drain, having been established more than 10 years.

Brace Lake is about three-quarters of a mile long and half a mile wide. Another small lake empties into it from the south. The drain crosses a public highway a few rods from the mouth of the drain. The defendants Stuart and Robinson own summer cottages near the mouth of the drain, between the highway and the shore. Complainant owns a farm situated on the north and west of the lake. The land around the lake is very low. This drain was laid out and completed as a public drain by the drain commissioner in 1871. No action has since been taken by the drain commissioner towards widening, deepening, or cleaning it out. Complainant without claim of authority, except as hereinafter stated, entered into the drain and cleaned it out between the lake and the bridge. He claims to only have cleaned it out to its original depth. The defendants claim that he dug it deeper and lowered it several inches below the depth as it had existed for more than 10 years. The commissioner erected a bridge over the drain on the highway. On digging for the abutments quicksand was found, and plank were laid across the drain at this point and the abutments erected upon them. These plank were under water, and have remained since the bridge was constructed.

Complainant claims that his land was injured by the rise of the water in the lake on account of the dam, which was about 15 inches high, constructed of cement, upon the plank under the bridge.

Defendants claim that the action of the complainant in

lowering and widening the ditch lowered the water in the lake and injured their property, and, in order to restore the water to its original height they constructed the dam.

Complainant entered upon the land of the defendants and into the ditch, and tore out the dam. He then filed this bill to enjoin the building of another. Each side gave testimony to sustain his theory. The case was heard upon pleadings and proofs taken in open court. The court found that the bottom or bench of the ditch was at the top of the plank under the bridge, and entered a decree enjoining the defendants from maintaining the dam.

*Hatch & Page*, for complainant.

*Miller & Miller* (*George H. Southworth*, of counsel), for defendants.

GRANT, J. (*after stating the facts*). The drain does not flow through the complainant's land, which is located some distance away. It was constructed about the year 1871, and had never been cleaned out prior to 1904, when the complainant entered upon the lands of the defendants for that purpose. It naturally became filled to a considerable extent by accretions and other means. No one, however, had complained or had taken any steps to secure its cleaning until about the year 1900, when the complainant presented a petition to the then drain commissioner, praying that the drain be cleaned out. The commissioner denied the petition, and no further action was taken under it.

Complainant claims that he afterwards had a talk with defendant Dickinson, the drain commissioner, about taking out the obstructions, and that the commissioner said to him, "Why, you have a right to go and take them out." That is the sole authority under which complainant claims the right to enter upon the lands of the defendants and others and clean out the drain. The effect of his work was to lower the lake from 9 to 10½ inches. The

defendants had erected cottages and had a summer resort near the mouth of the drain. They claim that the lowering of the lake has done great damage to their property.

The drain for many years had been in substantially the same condition as when complainant cleaned it out. The amount of water that passed through it depended upon the amount of the rainfall. In some dry seasons no water flowed through it. It is evident that there would be accumulations during that period. The only evidence of its depth as originally constructed was that of some witnesses who testified that, when the bridge was built, the plank were laid at the bottom or bench of the ditch as fixed by the commissioner. The complainant's bill alleged that he "had been unable to find the original petition and the survey bill for said drain or any copies thereof." Upon the hearing it was conceded to be "a public and legal drain for all the purposes of this suit."

Complainant introduced no evidence of the loss of the record of the proceedings for establishing and constructing it. The statute (2 Comp. Laws, § 4381) provides:

"Any drain that has been established for ten years shall be conclusively deemed to have been regularly established, and it shall be the duty of the county drain commissioner, where no records of such drains have been preserved, to see that the records of such drains are made in the most practicable manner in the drain records of their respective counties."

There is no evidence that the commissioner had performed this duty. Whether complainant in cleaning it out had dug deeper than the original bench or bottom is in dispute; but that he dug it wider than it originally was is well established. Three disinterested witnesses testified that it was several feet wider. This case is, in my opinion, a proper one for proceedings under 2 Comp. Laws, § 4379.

If, however, it be conceded that the complainant had the right to enter upon the lands of the defendants and clean out this drain (a right which I very much doubt), he

was limited in that right to the original dimensions of the drain. He failed to establish such dimensions, and therefore has failed in his proofs. Before doing this, he should have secured from the drain commissioner a compliance with the statute above quoted, restoring the records as far as practicable. Whether the complainant could be authorized by the commissioner to enter upon lands other than his own and clean out the drain through its full length, which had lain for nearly 35 years untouched, and meanwhile had become filled with natural accretions, is a question we need not determine.

Decree reversed, and the bill dismissed, with costs of both courts, but without prejudice, inasmuch as the merits of the case cannot be determined upon this record.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.